**NUSSBAUM APC**
Lane M. Nussbaum, SBN 264200
Richard J. Uss, SBN 273871
27489 Agoura Road, Suite 102
Agoura Hills, CA 91301
Tel. (818) 660-1919 Fax (818) 769-7959

Attorneys for Plaintiff Rob Kolson Creative Productions, Inc.

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB KOLSON CREATIVE PRODUCTIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>MARSHALL SCOTT STANDER, A/K/A SCOTT STANDER, an individual,<br><br>Defendant. | Bankruptcy Case No.: 1:19-bk-13099-MT<br><br>Chapter No.: 7<br><br>Adversary Case No.: _____<br><br>**COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO SECTION 727 OF THE BANKRUPTCY CODE** |

Plaintiff, Rob Kolson Creative Productions, Inc. ("Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendant-Debtor Marshall Scott Stander ("Debtor") pursuant to the *Federal Rules of Bankruptcy Procedure*, rule 7001, subd. (4) and alleges the following in support of the requested relief:

//
//

---

**1**
**COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO § 727 OF THE BANKRUPTCY CODE**

## JURISDICTION

1. Plaintiff consents to the entry of final orders or judgment by this Court.

2. On December 13, 2019, the Debtor filed a voluntary petition (the "Petition") for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States District Court for the Central District of California.

3. On January 17, 2020, the Debtor's duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Section 341 Meeting').

4. This Complaint is timely because the date by which a Complaint objecting to the Debtor's discharge expires on March 17, 2020.

5. This is an adversary proceeding in which the Plaintiff is objecting to the Debtor's discharge under Bankruptcy Code §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5).

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § 727.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

8. Plaintiff has standing to bring this action under and pursuant to Bankruptcy Code § 727 (c)(1).

9. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1409(a) as Defendant Marshall Scott Stander's Petition was filed herein.

## PARTIES

10. Plaintiff ROB KOLSON CREATIVE PRODUCTIONS, INC. (hereinafter, "Plaintiff") is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

11. Plaintiff has been a judgment creditor of the Debtor since 2014 and, in addition to propounding discovery, was in the process of conducting debtor exams of Debtor and third-party exams to enforce a Sister State Judgment in California in the United States District Court for the Central District of California, Case Number CV 18-6789-VAP (GJSx) (hereinafter "Judgment Debtor Case"). (Importantly, as will be demonstrated *supra*, <u>Plaintiff filed the Judgment Debtor Case in June 2018</u>.

12. Defendant MARSHALL SCOTT STANDER is the Debtor in the above-captioned case and at all relevant times has resided in the County of Los Angeles, State of California.

## GENERAL ALLEGATIONS

13. Debtor is the sole shareholder and owner of The Stander Group, Inc. (hereinafter "TSG"). Plaintiff is informed and believes that TSG's principal business is talent management for stage and theatre.

14. Through discovery in the Judgment Debtor Case, Plaintiff has obtained both the General Account and Client Trust Account banking records of TSG from 2017 until approximately mid-July 2019 (General Account) and mid-June 2019 (Client Trust Account) (hereinafter referred to as the "Known Activity"). Accordingly, the information revealed and provided *ante* regarding the activity in these accounts is limited in scope to only that timeframe.

15. Rita McKenzie is an individual residing in the County of Los Angeles, State of California. Upon information and belief, Rita McKenzie is the former spouse of Debtor and Debtor currently resides and/or cohabitates with Rita McKenzie.

16. Per Debtor's "Schedule A/B: Property," Debtor and Rita McKenzie share interest in a Citi checking account that, at the time of Debtor's filing of his Schedules, held approximately $5,000.

17. Upon information and belief, Rita McKenzie has an AMEX credit card the Debtor has access to and permission to use.

18. Jacqueline "Jackie" Stander is the sister of Debtor, and resides in the County of Los Angeles, State of California.

19. Marianne Stander is the mother of Debtor and resides in Florida.

## DEBTOR -MARSHALL SCOTT STANDER

20. In his Statement of Financial Affairs, signed by Debtor Marshall Scott Stander under penalty of perjury on December 27, 2019, Debtor listed in Part 2, Item 4 his income by year as follows:

   2017 - $      0.00
   2018 - $  7,902.00
   2019 - $ 13,000.00

21. Through discovery in the Judgment Debtor Case, Plaintiff has received a copy of Debtor's IRS-filed 2017 tax return in which he claims an Adjusted Gross Income of (-$1,931.00); which corresponds with the amount alleged for 2017 in his bankruptcy Statement of Financial Affairs.

22. From the Known Activity, in 2017, the year Debtor swore he had $0.00 in income, Debtor received from TSG a total of $88,355.81 in checks made out to him. Of this amount, $83,555.81 came from the General Account and $4,800.00 came from the Client Trust Account.

23. From the Known Activity, in 2018, the year Debtor swore he had only $7,902.00 in income, Debtor received from TSG a total of $30,205.00 in checks made out to him. Of this amount, $24,255.00 came from the General Account and $5,950.00 came from the Client Trust Account.

24. From the Known Activity, through July of 2019, the year Debtor swore he had only $13,000.00 in income, Debtor received from TSG a total of $25,251.00 in checks made out to him. Of this amount, $24,151.00 came from the General Account and $1,100.00 came from the Client Trust Account.

25. Accordingly, there appears to be major inconstancies between Debtor's Statement of Financial Affairs vis a vis the payments he received from TSG broken down as follows:

| Stated Income | v. | TSG to Stander |
|---|---|---|
| 2017 - $ 0.00 | | $88,355.81 |
| 2018 - $ 7,902.00 | | $30,205.00 |
| 2019 - $ 13,000.00 | | $25,251.00 |

## AMERICAN EXPRESS

26. As noted *supra*, Debtor has access to an American Express credit card believed to be in the name of Rita McKenzie. In the Judgment Debtor Case, a subpoena was issued to Rita McKenzie requesting the AMEX statements for 2016, 2017, 2018 and 2019. On November 12, 2019, Rita McKenzie advised via Declaration that she had ordered the requested statements, it would take 7-9 business days to receive them, and that she would serve those statements to Plaintiff's counsel upon receipt.

27. Upon information and believe, Debtor has been further masquerading his true income by using the AMEX credit card account to purchase non-TSG related goods and services for himself, then using TSG funds to pay off the accounts.

28. From the Known Activity, in 2017 TSG made $31,446.99 in payments to AMEX. Of this amount, $2,000.00 came from the General Account and $29,446.99 came from the Client Trust Account.

29. From the Known Activity, in 2018 TSG made $113,504.67 in payments to AMEX. Of this amount, $63,528.58 came from the General Account and $49,976.58 came from the Client Trust Account.

30. Notably, in June 2018, the same time that the Judgment Debtor Action was filed, the *modus operandi* of how TSG would pay the AMEX statements

changed. To wit, *prior to June 2018* all of the 2018 payments to AMEX came from the Client Trust Account. *From June 2018 on*, including through 2019, all of the payments to AMEX came from the General Account.

31. From the Known Activity, through July of 2019, TSG made $52,000.00 in payments to AMEX. As noted, all of these payments came from TSG's General Account.

32. Upon information and belief, most, if not all, of these payments from TSG to AMEX were, in fact, disguised income to Debtor. Accordingly, there appears to be even further major inconstancies between Debtor's Statement of Financial Affairs vis a vis the payment he received from TSG plus the personal use of the AMEX credit card broken down as follows:

| Stated Income | v. | TSG to Stander | AMEX |
|---|---|---|---|
| 2017 - $ 0.00 | | $88,355.81 | $ 31,446.99 |
| 2018 - $ 7,902.00 | | $30,205.00 | $113,504.67 |
| 2019 - $ 13,000.00 | | $25,251.00 | $ 52,000.00 |

33. Of further note, an AMEX statement from October 2019 produced in the Judgment Debtor Case via subpoena to Rita McKenzie (discussed in more detail *ante*), showed a rollover balance of $112,181.27. In September 2016 the balance was $95.00. Accordingly, in addition to the charges put on the AMEX card that TSG paid off, there is up to $112,181.27 of additional purchases for/income to Debtor that is still due and owing to AMEX.

### **RITA McKENZIE**

34. Upon information and belief, Rita McKenzie is not an employee of TSG and provides no services to TSG

35. Upon information and belief, Debtor has been further masquerading his true income by causing TSG to issue checks made payable to Rita McKenzie,

1 and then having those checks deposited in their joint Citi account or in some other
2 manner converting the funds transferred those by checks for his own personal use.

36. From the Known Activity, in 2017 Rita McKenzie received from TSG a total of $50,730.00 in checks made out to her. Of this amount, $50,730.00 came from the General Account.

37. From the Known Activity, in 2018 Rita McKenzie received from TSG a total of $45,590.00 in checks made out to her. Of this amount, $33,090.00 came from the General Account and $12,500.00 came from the Client Trust Account.

38. From the Known Activity, through July 2019 Rita McKenzie received from TSG a total of $62,300.00 in checks made out to her. Of this amount, $32,300.00 came from the General Account and $30,000.00 (one check made out on May 2, 2019) came from the Client Trust Account.

39. Upon information and belief, most, if not all, of these payments from TSG to Rita McKenzie were, in fact, disguised income to Debtor in that the purchases made with the AMEX credit card were not of the benefit and use of TSG, but rather for the benefit and use of Debtor. Accordingly, there appears to be even further major inconstancies between Debtor's Statement of Financial Affairs vis a vis the payment he received from TSG plus the personal use of the AMEX credit card plus the checks made out to Rita McKenzie broken down as follows:

| Stated Income | v. | TSG to Stander | AMEX | McKenzie |
|---|---|---|---|---|
| 2017 - $ 0.00 | | $88,355.81 | $ 31,446.99 | $50,730.00 |
| 2018 - $ 7,902.00 | | $30,205.00 | $113,504.67 | $45,590.00 |
| 2019 - $ 13,000.00 | | $25,251.00 | $ 52,000.00 | $62,300.00 |

//
//
//
//
//

7
**COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO § 727 OF THE BANKRUPTCY CODE**

Adding the apparent actual income from TSG payments, AMEX use, and checks made payable to Rita McKenzie results in the following breakdown:

| Stated Income | v. | Apparent Actual Income |
|---|---|---|
| 2017 - $ 0.00 | | $ 170,532.80 |
| 2018 - $ 7,902.00 | | $ 189,299.67 |
| 2019 - $ 13,000.00 | | $ 139,551.00 (through July, 2019) |

40. On September 14, 2019, Rita McKenzie was served with a document production subpoena in the Judgment Debtor Case. Among other items, the subpoena requested for the years 2016, 2017, 2018 and 2019 any documents evidencing services she had provided to TSG and compensation she had received for the same (her response declared there were *none and that none had ever existed*); any debts owed to her by TSG; and any expenditures she had made on behalf of TSG and/or Scott Stander.

41. On November 12, 2019, Plaintiff received Rita McKenzie's response, including her sworn Declaration under penalty of perjury. In regard to the AMEX account, Rita McKenzie was able only to produce two statements; one from August 2016 that possibly evidences a loan made by Rita McKenzie to TSG in the amount of $30,600.00 that TSG paid back in the same statement, and one from September 2019 that contained only activity on the AMEX account that occurred *after* the service of her subpoena (i.e. after it was known that the activity on the AMEX account would be exposed). As part of her sworn Declaration, she also advised that she had ordered the rest of the AMEX statements and would produce the same when she received them (approximately 7 to 9 business days). Although Debtor did not file for bankruptcy until nearly a month later (December 13, 2019), Rita McKenzie never produced the remaining AMEX statements. Perhaps relevant, in the Judgment Debtor Case Debtor and Rita McKenzie are represented by the same attorney.

42. Additional sums that TSG has paid for the benefit of Rita McKenzie and which should be attributable to Debtor as income include 20 payments to Chase Home Finance, the holder of a line of credit on Rita McKenzie's real property, from January 2017 to May 2019 totaling $9,047.00.

## JACQUELINE "JACKIE" STANDER

43. Upon information and belief, Jacqueline Stander does provide some services to TSG, however, the nature and extent of those services are unknown to Plaintiff. Due to the inconsistencies in the frequency and amount of payments to Jacqueline Stander from TSG, Plaintiff alleges that at least, in part, Debtor used those payments to further hide his true income and in some manner converted those monies for his own personal use.

44. From the Known Activity, in 2017 Jacqueline Stander received from TSG a total of $30,942.76 in checks made payable to her, all from the General Account.

45. From the Known Activity, in 2018 Jacqueline Stander received from TSG a total of $40,845.00 in checks made out to her. Of this amount, $37,563.00 came from the General Account and $3,282.00.

46. From the Known Activity, through July 2019 Jacqueline Stander received from TSG a total of $21,486.00, all from the General Account.

## MARIANNE STANDER

47. Upon information and belief, Marianne Stander, who resides in Florida, is not an employee of TSG and provides little, if any, services to TSG.

48. Upon information and belief, Debtor has been further masquerading his true income by causing TSG to issue checks made payable to Marianne Stander and then in some manner converting the funds transferred by those checks for his own personal use.

49. From the Known Activity, in 2017 Marianne Stander received from TSG a total of $9,250.00 in checks made payable to her, all from the General Account.

50. From the Known Activity, in 2018 Marianne Stander received from TSG a total of $15,000.00 in checks made payable to her, all from the General Account.

51. From the Known Activity, through July 2019 Marianne Stander received from TSG a total of $800.00 in checks made payable to her, all from the General Account.

52. Additional sums that TSG has paid for the benefit of Marianne Stander and which should be attributable to Debtor as income include 9 payments to Homeowner's Choice from March 2017 to June 2019 totaling $13,057.00. Upon information and belief, Homeowner's Choice is the homeowners insurance company that insures the real property owed by Marianne Stander in Florida.

53. In addition, from April 2017 *until June 2018*, some type of software, perhaps Quickbooks, was used to change/edit the named payor on 33 General Account electronic checks from TSG to either Marianne Stander (27) or Jacqueline Stander (6). These checks were made payable to Citibank (17), Best Buy (7), NTB (5) and Sears (4). The total amount of these checks was $4,216.62. Notably, *after June 2018*, no further electronic checks were made in this manner.

## **"CASH"**

54. Upon information and belief, Debtor has been further masquerading his true income by causing TSG to issue checks made payable to "Cash."

55. In 2018, *but prior to June 2018*, TSG issued $18,950.00 in checks made out to "Cash." *After June 2018*, TSG issued only $220.00 in checks made out to "Cash."

## BANK OF AMERICA

56. Upon information and believe, Debtor has been further masquerading his true income by using a Bank of America credit card account to purchase non-TSG related goods and services for himself, then using TSG funds to pay off the accounts.

57. In 2018, *but prior to June 2018*, TSG issued $26,182.00 in checks payable to Bank of America. *After June 2018*, TSG issued $6,240.00 in checks payable to Bank of America.

## GENERAL REVENUE

58. Plaintiff is informed and believes, and on that basis alleges, that in 2017, the same year that Debtor and sole owner of TSG declared $0.00 in income, TSG's gross revenues were approximately $864,000.00.

59. Plaintiff is informed and believes, and on that basis alleges, that in 2018, the same year that Debtor and sole owner of TSG declared $7,902.00 in income, TSG's gross revenues were approximately $1,207,500.00.

60. Plaintiff is informed and believes, and on that basis alleges, that in the first two (2) fiscal quarters of the 2019, the same year that Debtor and sole owner of TSG declared $13,000 in income, TSG's gross revenues were approximately $597,000.00.

61. Plaintiff is informed and believes, and on that basis alleges, that during the period of 2017 through the second quarter of 2019, that Debtor has caused to be transferred from TSG's trust account to its operating account in excess of $1,750,000.00.

## ATTORNEY FEE FOR BANKRUPTCY

62. Debtor is the person/entity filing for bankruptcy. Despite this fact, Debtor paid his attorney her $7,500.00 fee for the filing and handling of his bankruptcy directly via check from TSG. (See Statement of Financial Affairs, Part

7, Item 16). Accordingly, this amount represents additional 2019 income of Debtor.

## ATTORNEY FEES FOR DEBTOR EXAM ("JUDGMENT DEBTOR CASE")

63. Debtor is the person/entity filing for bankruptcy. The activity in the Judgment Debtor Case began in June, 2018. That action was against Debtor, not TSG, however, since June 2018, TSG has paid to Peter J. Babos, the attorney representing Debtor in the Judgment Debtor Case, $28,500.00.

64. Upon information and belief, "To Russia From Love" is an entertainment production put on by TSG.

65. There are three credits to TSG's Client Trust Account from "Peter J. Babos, Attorney at Law" in December 2017 and January 2018 showing that the attorney paid *to* TSG a total of $18,730.00, as well as four payments from TSG to "The Law Offices of Peter J. Babos" for $5,100.00 each ($20,400.00 total) from February 2018 to May 2018. Those checks notate "To Russia with Love" in the memorandum line. Two were issued from the General Account and two were issued from the Client Trust Account.

66. Of the $28,500.00 paid to Peter J. Babos after June 2018, $25,500 was made via one check to "The Law Offices of Peter J. Babos" designated as a "final" payment for "To Russia with Love." The date of the check is November 1, 2018, one day shy of six months from the last of the previous "Russia" checks.

67. The two other post-June 2018 checks were both in the amount of $1,000.00 and were designated as "deposition fee" and "legal fees" respectively. A third-party debtor exam of TSG, however, never took place. Only Debtor had his exam taken.

//

//

//

68. Altogether, TSG paid Peter J. Babos at total of $63,400.00 from January 2017 through mid-2019. Of this amount, $62,400.00 was payable to "The Law Offices of Peter J. Babos." The $1,000.00 check for "legal fees" was payable to "Peter J. Babos, attorney at law."

69. Due to the fact that none of these payments to Peter J. Babos were made out to him individually (as a return on an investment in "To Russia with Love" would/should be), that $26,700.00 of the payments came from the General Account while $36,700.00 came from the Client Trust Account, and at least $2,000 was paid directly for the benefit of Debtor, upon information and belief Plaintiff alleges that, at least in part, these payments from TSG to Peter J. Babos were for the benefit of Debtor rather than TSG and as such represent additional income to the Debtor.

## FIRST COUNT
## OBJECTION TO DEBTOR'S DISCHARGE UNDER § 727(a)(2)(A)

70. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

71. Bankruptcy Code § 727(a)(2)(A) provides that:

(a) The court shall grant a discharge unless-

…

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

…

(A) property of the debtor, within one year before the date of the filing of the petition;

72. As demonstrated in the above paragraphs, Debtor, individually and through his operation and ownership of TSG, within the one-year period prior to December 13, 2019, with intent to hinder, delay or defraud his creditors including Plaintiff, has or has permitted to be transferred, removed and/or concealed funds that if rightfully reported and treated as income, would have been subject to garnishment or other collection procedures by his creditors or might have otherwise barred his qualifications to proceed with a Chapter 7 bankruptcy.

73. By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(2)(A).

## SECOND COUNT

## OBJECTION TO DEBTOR'S DISCHARGE UNDER § 727(a)(3)

74. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

75. Bankruptcy Code § 727(3) provides that:

(a) The court shall grant a discharge unless-

…

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case

69. As demonstrated in the above paragraphs, Debtor, individually, an through his operation and ownership of TSG, has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including the information contained in his 2017 tax return, and, upon information and belief, the information in his 2014, 2015, 2016 and 2018 tax returns, as well as the information contained in his Statement of Financial Affairs attached to his bankruptcy petition.

70. By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 727(3).

## THIRD COUNT

## OBJECTION TO DEBTOR'S DISCHARGE UNDER § 727(a)(4)(A)

71. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

72. Bankruptcy Code § 727(a)(4)(A) provides that:

(a) The court shall grant a discharge unless-

…

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

73. As demonstrated in the above paragraphs, Debtor has knowingly and fraudulently made both a false oath and account in his Statement of Financial Affairs by vastly underreporting his true income and then declaring under penalty of perjury that the information contained therein was accurate.

74. By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(4)(A).

## FOURTH COUNT

## OBJECTION TO DEBTOR'S DISCHARGE UNDER § 727(a)(5)

75. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

76. Bankruptcy Code § 727(a)(4)(A) provides that:

(a)    The court shall grant a discharge unless-

…

(4) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

77. As demonstrated in the above paragraphs, in light of Debtor's continual masquerading of his true income from TSG, to date, Debtor has failed to explain satisfactorily the loss or deficiency of assets to meet the Debtor's liabilities.

78. By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(5).

## PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment denying the Debtor's discharge under Bankruptcy Code §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5), and granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated:  February 25, 2020                                  NUSSBAUM APC


By:___[signature]___
Lane M. Nussbaum
Attorneys for Plaintiff
Rob Kolson Creative Productions, Inc.